UNITED STATES of America,
Plaintiff-Appellee,

v.

Terry Lee ODUM, Willie James Holmes, Rufus Nathaniel Murray, Glen Dale Sivils, Moses Jones, David Coleman Butler, III, Ennis Boyd Taylor, Terry Allen Smith, Alan Louis Smith and Ellis Arnold Phillips, Defendants-Appellants.

No. 79–5416.

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1980.

John Wright Jones, Savannah, Ga., for Holmes, Murray, Sivils & Jones.

Jim Blanchard, Jr., Augusta, Ga., for Butler.

Lewis M. Groover, Jr., Atlanta, Ga., for Smith, Smith and Phillips.

Alvin E. Entin, North Miami Beach, Fla., Thomas Curry Bordeaux, Jr., Savannah, Ga., for Holmes, Murray, Sivils & Jones.

James K. Jenkins, Atlanta, Ga., for Odum & Taylor.

Melissa S. Mundell, William H. McAbee, II, Asst. U.S. Attys., Savannah, Ga., for plaintiff-appellee.

Before HENDERSON, HATCHETT and TATE, Circuit Judges.

HATCHETT, Circuit Judge:

Each of the ten appellants herein was convicted on Count I for conspiracy to knowingly and intentionally possess marijuana, in violation of 21 U.S.C. § 846, and on Count II for possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). David Coleman Butler was also convicted on Count III for unlawfully using a firearm during the commission of the above enumerated offenses, and on Count IV for unlawfully carrying a firearm during the commission of those same offenses, in violation of 18 U.S.C. § 924(c). Terry Allen Smith was also convicted on Count V for unlawfully carrying a firearm during the commission of the first two enumerated offenses, and on Count VI for unlawfully using a firearm during the commission of those same offenses, in violation of 18 U.S.C. § 924(c). In this opinion, we reverse the convictions against Terry Lee Odum on Counts I and II; vacate the sentence imposed for the conviction of Ennis Boyd Taylor on Count I and remand for resentencing; vacate the sentences imposed for convictions on Counts III through VI and remand for resentencing; and affirm in all other respects.

On the night of February 2, 1979, in Darien, Georgia, a citizen reported seeing suspicious activity near the city bridge on the Darien River. Between nine and ten o'clock that night, Terry Allen Smith, was driving south on U.S. Highway 17 in a 1969 International Harvester Loadstar 1600 truck. After crossing a bridge which spans the Darien River just south of Darien, Smith was stopped by an officer of the Darien City Police Department for driving with an expired license tag. Smith was arrested and taken to the McIntosh County Sheriff's Office in Darien. The truck was left on the side of the road. Smith would not give law enforcement officers permission to search the truck. A search warrant was obtained and several officers returned to the truck with Smith, where other officers were waiting. Upon opening the rear of the truck, the officers discovered some 218 bales of suspected marijuana. Officers of the McIntosh County Sheriff's Department then proceeded to Ploeger's Dock, a dock area on the Darien River near the point where Smith was stopped on U.S. Highway 17 and in the area where the suspicious activity had been reported. The officers did not obtain a warrant to search Ploeger's Dock. More suspected marijuana was found in a tractor-trailer rig parked at the dock and on the shrimp boat "Murray's Pride", tied up at the dock. All but three of the remaining defendants were arrested either in the immediate vicinity of the dock or attempting to flee the area. Willie James Holmes was arrested at a nearby hotel; Odum was arrested after being found in a Volkswagon automobile near the bridge; and Butler was arrested on February 3, 1979 after his surrender.

At a pre-trial suppression hearing on June 8, 1979, the defendants sought to suppress the evidence obtained from the search of the Loadstar truck, and Ploeger's Dock, including the tractor-trailer, and the vessel "Murray's Pride." The government did not contest the attack on the validity of the search warrant for the truck. Defendants contended that a warrantless search of the truck would have been invalid for lack of probable cause or exigent circumstances. The other searches were alleged to have been carried out without probable cause.

Terry Allen Smith testified at the suppression hearing that on February 1, 1979, at a convenience store between Savannah and Shellman's Bluff, Georgia, he met an individual whose name he never discovered but who offered to pay Smith an unstated amount of money to drive a truck on the following evening. They agreed that Smith

would meet this individual at a convenience store on the following evening. The meeting took place as planned, and Smith rode with this unnamed individual to another convenience store where the truck was parked. Smith was instructed to drive the truck south on U.S. Highway 17 until stopped outside of Brunswick, Georgia, some sixty miles to the south, where he would be relieved of the truck. Smith was not informed of the identity of the person or persons who would stop him or of the precise location for the rendezvous. Smith assumed, without reaching an explicit understanding, that after being intercepted near Brunswick and after relinquishing control of the truck, he would be driven back to the first convenience store.

Smith was the driver and sole occupant of the Loadstar truck when it was stopped on the night of February 2, 1979. He disclaimed any proprietary interest in the truck or its cargo. He denied knowing who owned the truck or that the truck was loaded with contraband.

It was also adduced at the suppression hearing that no defendant had any record interest in the approximately one and one-third acres known as Ploeger's Dock. The McIntosh County Development Authority holds the fee simple title to the land, but its deed was not recorded until February 16, 1969. On February 2, 1979, there was an outstanding lease to the Darien Waterfront Association, an unincorporated association devoted to promoting development in the waterfront area for the public benefit. No defendant attempted to show that he was a member of this organization.

The trial court found that all of the defendants lacked standing to challenge the legality of either search because no defendant demonstrated a legitimate expectation of privacy which was violated by the searches. The defendants all sought to suppress evidence in reliance upon the "automatic standing" rule in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled* by *United States v. Salvucci*, —— U.S. ——, 100 S.Ct. 2547, 65 L.Ed.2d —— (1980). *Jones* held that a defendant charged with a crime that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure has automatic standing to challenge the legality of the search and seizure.

■ We uphold the decision of the district court by reliance upon *United States v. Salvucci*, which overrules the "automatic standing" rule in *Jones v. United States*. "We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." *United States v. Salvucci* at, —— U.S. ——, 100 S.Ct. at 2553. According to the Supreme Court, the appropriate inquiry now is "not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." *Id.*

### ODUM

Terry Lee Odum contends that the evidence used to convict him is insufficient to prove that he either possessed or entered into a conspiracy to possess marijuana with intent to distribute, as charged in Counts I and II.

■ To assess the sufficiency of evidence in criminal cases we view the evidence, and all inferences that may reasonably be drawn from it, in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). If we can say that a reasonably-minded jury must necessarily have entertained a reasonable doubt as to the appellant's guilt, we must reverse. *United States v. Barrera*, 547 F.2d 1250 (5th Cir. 1977).

■ The sum of the uncontroverted facts connecting Odum to any crime is as outlined below. He was discovered in a Volkswagon automobile not belonging to him approximately four hours after the events at the Darien dock began to unfold. There is evidence that his jeans were wet, that he was missing his shoes, and that he had mud between his toes. His jacket pocket con-

tained a trace of marijuana and a cigarette paper. The amount of marijuana found in his jacket, along with a cigarette rolling paper, demonstrates likely personal use, which Odum admits, rather than the kind and amount of accumulation related to unloading bales of marijuana. Unlike those of several other defendants, the cuffs of Odum's jeans contained no marijuana. There was no trace of marijuana on his T-shirt. Further, a witness testified that on the night of the raid, Odum was fishing and drinking with the witness until the time leading to his arrest in the Volkswagon automobile. In our view, the government failed to introduce sufficient evidence to prove Odum's guilt beyond a reasonable doubt.

## TAYLOR

■ Taylor and Odum argue that the conspiracy section of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 846, cannot be interpreted to authorize the imposition of a special parole term, its punishments being listed as only fine and imprisonment.[1] Both Taylor and Odum were sentenced to serve jail terms (five and four years, respectively), to pay fines ($5,000 and $3,000 respectively), and to serve special parole terms of ten years following their imprisonment on the conspiracy convictions. Congress did not intend to authorize the sentencing court to impose a term of special parole upon a defendant who is convicted of conspiracy to

manufacture or distribute a controlled substance under section 846. *Bifulco v. United States*, —— U.S. ——, 100 S.Ct. 2247, 65 L.Ed.2d —— (1980). Therefore, Taylor's sentence as to Count I must be vacated and remanded to the district court for resentencing. This point of error is rendered moot as to Odum because of our reversal of his convictions.[2]

## BUTLER and SMITH

David Coleman Butler contends that it was error for the trial court to impose separate sentences under Counts III and IV of the indictment which respectively charged the unlawful use of a firearm in the commission of a felony in violation of 18 U.S.C. § 924(c)(1) and the unlawful carrying of a firearm in the commission of a felony in violation of section 924(c)(2).

■ Terry Allen Smith advances the same argument with respect to Counts V and VI. They argue that Congress did not intend to make the carrying of a firearm during the commission of a felony a separate crime from the use of a firearm during the commission of a felony when the carrying is shown to be a part and parcel of its use. We agree. Looking to the plain language of section 924(c),[3] our interpretation is that Congress did not intend for separate sentences to lie for "carrying" and "using" a firearm during the commission of a felony, when the "carrying" and "using" arise out of the same factual occurrence. The Fourth Circuit presents persuasive reason-

---

1. Section 846 provides:
   Any person who attempts or conspires to commit any offense defined in this subchapter [including possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1)] is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. Although the other eight co-defendants must serve a special parole term in accordance with their sentences for convictions on Count I, we are precluded from considering error as to them on this point due to their failure to raise the point on this appeal. In any event, identical special parole terms were also imposed for Count II for each co-defendant, to be served

concurrently with the terms imposed for Court I. Appellants suffer no prejudice by failing to challenge the error.

3. Title 18 U.S.C. § 924(c) provides in pertinent part:
   (c) Whoever—
   (1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or
   (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States, shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years.

**630**

ing to support this conclusion: "[W]here a single act is the proof of two offenses set forth in the same subsection, it is our opinion that Congress did not intend for separate sentences to lie." *United States v. Crew*, 538 F.2d 575, 578 (4th Cir.), *cert. denied* 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976).

The appellants also allege error (1) in the refusal of the district court to give a special cautionary instruction to the jury on witness credibility, and (2) that the present statutory classification of marijuana under the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, 966, is improper and unconstitutional. Butler, who was tried separately due to the death of a material witness, urges that the verdict against him is contrary to the weight of the evidence and that he was erroneously denied immunity from prosecution as a peace officer acting in an official capacity, under 21 U.S.C. § 885(d). We find these allegations of error to be without merit.

### CONCLUSION

Accordingly, we reverse the convictions against Odum on Counts I and II; vacate the sentence imposed for the conviction of Taylor on Count I and remand for resentencing; vacate the sentences imposed for convictions on Counts III through VI and remand for resentencing (Butler and Terry Allen Smith); and affirm in all other respects.

AFFIRMED IN PART, REVERSED IN PART, AND VACATED AND REMANDED IN PART.

