**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jeffrey Thomas STRMEL,
Defendant-Appellant.**

No. 83–3688.

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1984.

Frank G. Desalvo, Michele Gaudin, New Orleans, La., for defendant-appellant.

John P. Volz, U.S. Atty., Thomas Watson, Harry W. McSherry, Jr., Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before RUBIN, REAVLEY and TATE, Circuit Judges.

REAVLEY, Circuit Judge:

Jeffrey Strmel was convicted by a jury of conspiracy to import marijuana, 21 U.S.C. §§ 952, 960, 963 (1982), conspiracy to possess with intent to distribute marijuana, 21 U.S.C. §§ 841, 846 (1982), and possession with intent to distribute marijuana, 21 U.S.C. § 841 (1982). We affirm.

On June 23, 1983, United States Customs Service agents without a warrant searched a trailer that had been in Customs' custody since May 29, 1983, when it was shipped to the United States from Venezuela.[1] The trailer was consigned to David Schultz. The agents pried open one of the trailer's doors and found approximately 7,000 pounds of marijuana behind a false wall in the rear of the trailer. The Customs agents attached two electronic devices to the trailer. One was placed behind the false wall to alert authorities if the false walls were to be breached; the second, a tracking device, was attached on the bottom of the trailer's exterior. The trailer was then reclosed and kept under constant surveillance. On the morning of June 24, 1983, the trailer was released by Customs.

---

1. "Because we are not here concerned with the issue of probable cause, a brief description of the events leading to the search[es] ... will suffice." *Rakas v. Illinois,* 439 U.S. 128, 130, 99 S.Ct. 421, 423, 58 L.Ed.2d 387 (1978).

On the afternoon of June 24, Gregory Bell, a truck driver hired by Schultz to haul the trailer to Atlanta, and Strmel, an employee of Schultz who was to direct Bell to where the trailer was to be delivered in Atlanta, claimed the trailer. The trailer was hooked up to a tractor owned and driven by Bell. Bell then proceeded to drive the trailer-tractor unit to Atlanta accompanied by Strmel.

Strmel and Bell were arrested that evening in Slidell, Louisiana. A warrantless search of the tractor cab produced a briefcase owned by Bell which contained a radio frequency detector, a device designed to detect the presence of electronic surveillance devices. Strmel never claimed ownership of the detector.

Strmel appeals three points: first, the district court, 574 F.Supp. 793, erred in holding Strmel did not have standing to assert that the search of the trailer, the tractor, and briefcase violated his Fourth Amendment rights; second, assuming Strmel had standing, the searches were not valid border searches; and third, certain statements made by the United States attorney during closing argument deprived him of a fair trial.

■ The first inquiry in determining whether Strmel's Fourth Amendment rights were violated is whether the search or seizure violated his legitimate expectations of privacy.[2] *Rakas v. Illinois,* 439 U.S. 128, 148, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). Furthermore, the burden of establishing a legitimate expectation of privacy is on Strmel. *Id.* at 130 n. 1, 99 S.Ct. at 424 n. 1, 58 L.Ed.2d at 393 n. 1. Therefore, to prevail, Strmel would have to establish that he had a legitimate expectation of privacy in each of the areas searched: one, Schultz's trailer; two, Bell's tractor; and three, Bell's briefcase. Each area will be examined separately.

First, in *United States v. Parks,* 684 F.2d 1078 (5th Cir.1982), an electronic

tracking device, similar to that attached to the trailer in the present case, was placed in a plane owned by a nondefendant prior to defendant's piloting of the plane. The court first held that the initial search, the placing of the device in the plane, did not violate the defendant's Fourth Amendment rights, because the defendant could not have a legitimate expectation of privacy in a plane in which he had no interest. *Id.* at 1084. Concerning the continuing search, the monitoring of the electronic device while defendant flew the plane, the court assumed that defendant's piloting of the plane was proper and held that the defendant did not have a legitimate expectation of privacy of the plane's location, whether defendant was acting on his behalf or that of the plane's owner. *Id.* at 1085–86.

■ Strmel's position is no stronger than that of the defendant in *Parks.* Strmel had no interest in the trailer when the electronic devices were first placed in and on the trailer; even if Strmel had an interest in the trailer, it did not arise until Bell and Strmel claimed the trailer. Therefore, Strmel had no legitimate expectation of privacy in the trailer at the time of the initial search. Furthermore, Strmel's directing Bell to where the trailer should be delivered on behalf of Schultz, under *Parks,* did not give Strmel a legitimate expectation of privacy to the trailer's location.

■ Second, a passenger in a vehicle owned by another, absent other circumstances, does not have a legitimate expectation of privacy in the car or its glove compartment. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1979). Like the defendants in *Rakas,* Strmel was merely a passenger in the tractor and, therefore, had no legitimate expectation of privacy in the tractor.

Strmel urges that *Rakas* does not apply, because, unlike the defendants in *Rakas,*

---

**2.** This concept is often referred to as standing, *e.g., United States v. Parks,* 684 F.2d 1078, 1086 (5th Cir.1982), but the Court in *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 429, 58 L.Ed.2d

387 (1978), preferred to rest its analysis on substantive Fourth Amendment doctrine rather than standing.

he was employed by the consignee of the trailer to direct the trailer to its destination. Strmel's argument fails for two reasons. First, the car searched in *Rakas* was the getaway car for the robbery the defendants had just committed. *Id.* at 130, 99 S.Ct. at 423, 58 L.Ed.2d at 392. Presumably, the passengers it controls in *Rakas* over the getaway car was similar to Strmel's control over the trailer. Second, Strmel did not carry his burden of establishing why his authority to direct the destination over the trailer consigned to another gave him any greater legitimate expectation of privacy in the tractor than his status as a mere passenger.

■ Finally, *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), held that the defendant did not have a legitimate expectation of privacy in a friend's purse where defendant had placed drugs belonging to him. Here, Strmel did not produce any evidence that he had a legitimate expectation of privacy in Bell's briefcase, especially considering that the seized electronic detector device did not belong to Strmel.

In summary, Strmel did not establish that he had a legitimate expectation of privacy in the trailer, tractor, or briefcase. Therefore, Strmel's Fourth Amendment rights were not violated.

Because we have held that Strmel did not have a legitimate expectation of privacy in the areas searched, we do not need to address whether the searches are valid border searches. One aspect of Strmel's border search argument, however, should be addressed.

■ Strmel asserts that the search of the trailer was improper because the trailer had been in Customs' custody for almost a month before the search and there was no evidence that the marijuana had not been planted in the trailer while in Customs' custody. At the suppression hearing, the trial court found, and the record supports, that the trailer had been in the custody of Customs or that of its licensed and bonded carriers, or under constant Customs surveillance, from the time the trailer entered the country to the time of Strmel's arrest. Considering that Strmel failed to present any evidence that the marijuana was planted in the trailer, we cannot disagree with the district court's conclusion that it was highly improbable that during this period over 7,000 pounds of marijuana was planted behind a false wall in a trailer otherwise filled with cargo. *See Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) (search of defendant's car for drugs after it had been in police custody for one week upheld).

■ Strmel's final argument on appeal is that the United States Attorney made certain statements during closing arguments that deprived him of a fair trial.[3] Strmel first complains that two of the United States Attorney's statements were assertions of his personal knowledge in the case as fact. The first statement was:

> Well, ladies and gentlemen, they may put the Government on trial, but I'm going to tell you, thank God for Customs and the Drug Enforcement Administration, ladies and gentlemen. Thank God for their diligence and their expertise. They didn't bungle this investigation. Look at the evidence. There's plenty of evidence to find those two defendants guilty. And without Customs and the DEA those two guys and their cohorts would have gotten clean away with it.

Strmel specifically claims that the United States Attorney was vouching for government witnesses. This statement, however, was in response to a defense lawyer's closing argument that the government officials had bungled the investigation. Therefore,

---

**3.** Of the eight statements Strmel claims were improper, no objections were raised by Strmel's attorney. The attorney for Strmel's codefendant, however, voiced two objections. Strmel maintains, and the United States denies, that an agreement was reached at the pretrial conference whereby an objection by one attorney would be treated as an objection for both defendants. Because this court holds that the statements were neither improper nor prejudicial, the existence of such an agreement is irrelevant.

the statement was permissible rebuttal. *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir.1981). Furthermore, the United States Attorney is permitted to state that he believes the evidence establishes the defendant's guilt. *United States v. Morris*, 568 F.2d 396, 402 (5th Cir.1978).

The second statement of which Strmel complains was:

> Well, ladies and gentlemen, I'm sure others were involved in this caper. I have no doubt in my mind about it and they'll be dealt with eventually, but that's no reason whatsoever to let those two men get away with it. They are the first to fall, ladies and gentlemen, but they won't be the last, and I want the evidence to be just as strong against the other participants in this criminal venture, when we bring them to trial, as it is against [Strmel].

Strmel argues that the statement expressed the United States Attorney's views on the evidence. This statement was, however, again proper rebuttal in response to another defense argument that the real criminals had escaped being brought to trial. *Dorr*, 636 F.2d at 120. Furthermore, the United States Attorney is permitted to state what has been established by the evidence and to comment fairly upon it. *United States v. Martinez*, 616 F.2d 185, 187 (5th Cir.1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981).

Strmel next complains that a number of the United States Attorney's statements penalized him for exercising his right to counsel and struck at the core of his defense. These statements were:

> You may have noticed during the course of the presentation of the defenses' case—and I'd like to talk about their case before I talk about ours—they employed what we call in the U.S. Attorney's Office "a defense tactic," and it's used primarily in a case like this when you've got clients against whom the evidence is absolutely overwhelming, caught red-handed using an RF detector to scan the load.
>
> . . . .

> Their tactic is, in light of all this evidence, you put the Government on trial, you put the agents on trial. See if you can't make the jury forget about that evidence, because if you blow enough smoke you cloud the issues enough, maybe somebody will get confused. That's the hope, ladies and gentlemen, and that's just what they tried to do, and I'm asking you not to let them get away with that.
>
> . . . .

> Ladies and gentlemen, another tactic that they used and that's this thing Mr. Mosca has devised in which you all have probably been looking at, is to try people who aren't here today for the same reason. Maybe if you can focus on someone who's not a defendant right now, although he may be later on, maybe if you can make the jury focus on that, the two guilty guys, sitting right there (indicating), will walk right out of this courtroom, they'll slip through the fingers of justice.

Again, these statements were made in response to the defense attorneys' handling of the case and closing arguments and a proper subject of closing arguments. *Samuels v. United States*, 398 F.2d 964, 967–68 (5th Cir.1968), *cert. denied*, 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969). In no way did the mention of Strmel's attorney, Mr. Mosca, infer that Strmel was guilty merely because he was exercising his right to counsel or that Mosca was guilty of wrongdoing. *Compare United States v. McDonald*, 620 F.2d 559 (5th Cir. 1980) (in closing argument, prosecutor stated that defense attorney's presence at defendant's house prior to a police search pointed to the conclusion that they destroyed evidence).

The final set of statements of which Strmel complains were:

> They would have spread that marijuana all over the United States, all 7,000 pounds of it: the streets, the schools, no place would have been safe from it.
>
> . . . .

Mr. Bell had that money because he had to be able to make change as he peddled that junk all over the streets of the United States.

. . . .

Ladies and gentlemen, these are veteran dope smugglers, absolutely. They knew exactly what they were doing, they had the equipment, they knew just what they were up to. They knew, ladies and gentlemen, but they didn't care. They didn't care where that marijuana was going as long as they got their money out of it. And don't let anybody tell you that Mr. Schultz might be responsible. He might be, he probably is. These two individuals are the ones on trial before you and they are nothing but peddlers, ladies and gentlemen, big fish. They're not like guys on the street corner that's selling an ounce, these are the biggies, ladies and gentlemen.

Strmel contends these statements impermissibly appealed to the jury's prejudices. These statements, however, were proper under the circumstances, because either they were in response to the defense closing argument that Strmel was just a minor participant in the scheme and the government let the persons truly responsible escape the justice system, *Dorr,* 636 F.2d at 120, or a fair·comment upon the evidence presented, *Martinez,* 616 F.2d at 187.

Even if any of the above statements taken out of context were improper, we are convinced that Strmel was not prejudiced. First, the trial judge admonished the jury on three separate occasions that the attorneys' arguments were not evidence and should be disregarded unless supported by the evidence. *United States v. Shackelford,* 709 F.2d 911, 914 (5th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 253, 78 L.Ed.2d 239 (1983). Second, the evidence of Strmel's guilt was very strong. *United States v. Cotton,* 631 F.2d 63, 66 (5th Cir. 1980), *cert. denied,* 450 U.S. 1032, 101 S.Ct. 1743, 68 L.Ed.2d 227 (1981).

The conviction of Jeffrey Strmel is AFFIRMED.