UNITED STATES of America

v.

**Sean Christian TARRANT, Jon Lance Jordan, Christopher Barry Greer, Michael Lewis Lawrence, Daniel Alvis Wood.**

**Crim. A. No. 3–89–293–H.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 16, 1990.

See also 730 F.Supp. 30.

---

James P. Turner, Acting Asst. Atty. Gen., Civil Rights Div., U.S. Dept. of Justice, and Barry Kowalski and Suzanne Drouet, Attys., Crim. Section, Washington, D.C., for plaintiff U.S.

Craig Jett, Dallas, Tex., for defendant Daniel Alvis Wood.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court is Defendant Wood's Motion to Suppress Fruits of Illegal Search and Seizure, filed December 15, 1989; and the Government's Response, filed January 2, 1990.

Defendant Wood requests a hearing to present evidence he claims will show that, while he and others were riding in a pickup truck bearing a camper shell in Garland on November 9, 1988, they were stopped by the Dallas and Garland police, removed from the vehicle, arrested, and had ball bearings and spray paint seized from the truck. Wood alleges a violation of his fourth amendment rights because (1) the stop was without probable cause, (2) his arrest was not made pursuant to a warrant or the warrant was defective, and (3) the search and seizure of the materials from the truck was illegal.

A. *Facts.*

The following factual exposition, condensed from the Government's Response, is not contested by the Defendant, except where noted. *See, e.g.,* Government's Response at 1–3; *see generally* Defendant's Motion.

In the fall of 1988, following incidences of vandalism at several Jewish centers in Dallas, the Dallas Police Department created a special task force to investigate racist criminal activity. On November 9, 1988, this task force had concerns about potential activity from the Confederate Hammerskins, a group to which the Defendant alleg-

edly belonged, and which was known as a racist "Skinhead" group whose members were purported to be violent and anti-semitic. That evening of November 9th was the fiftieth anniversary of "Kristallnacht", the evening in 1938 when the German nazis vandalized Jewish businesses by, among other acts, breaking windows. The task force suspected that the Confederate Hammerskins would attempt some act of violence in commemoration of the anniversary.

Consequently, the task force conducted surveillance at several locations including potential targets of vandalism. Another observation point was the alleged headquarters of the Confederate Hammerskins, located in Garland. When, after midnight, several vehicles left the Garland headquarters, officers followed one of them, a Chevrolet pickup truck, and stopped it several blocks later. Defendants Wood and Jordan were identified among the passengers.

After the stop, the officers determined that Defendant Wood and another passenger had outstanding arrest warrants for traffic violations in Garland, and they were arrested. The officers also observed a number of items in the truck, including spray paint and large ball bearings, which were then seized.

### B. *Suppression of Seized Items.*

■ Presented with a fourth amendment issue, a court must ask both whether the defendant is seeking to protect his or her own rights and, if so, whether those rights have been violated. *Rakas v. Illinois,* 439 U.S. 128, 139, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). Fourth amendment rights are personal rights that may not be vicariously asserted. *Id.* at 133–34, 99 S.Ct. at 425–26. In order to establish a violation of these rights, a defendant must prove he or she had a legitimate expectation of privacy, that is, a subjective expectation of privacy in the area searched with such expectation being one society would find to be objectively reasonable. *Id.* at 143 n. 12, 99 S.Ct. at 430 n. 12.

In *Rakas v. Illinois, supra,* the Supreme Court held that a defendant could have no legitimate expectation of privacy in the glove compartment or area beneath the passenger seat in a vehicle owned and driven by another. Comparing that situation to others in which the Court ruled no legitimate expectation of privacy existed, the Justices stated that "these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." *Id.* at 148–49, 99 S.Ct. at 433.

■ Similar to *Rakas,* neither Defendant Wood or Jordan possessed any privacy interest in the truck in which they were passengers. Neither defendant claims to have owned the pickup nor to have been driving it at the time of the police stop. Consequently, no fourth amendment interest of either defendant was implicated in the police search and seizure. *See United States v. Strmel,* 744 F.2d 1086, 1088–89 (5th Cir.1984) (passenger in tractor cab had no legitimate expectation of privacy in tractor nor in briefcase he did not own found therein). Therefore, suppression of the seized evidence and any evidence obtained indirectly from the seizure is not proper. Furthermore, no hearing is necessary to determine this matter. *United States v. Poe,* 462 F.2d 195, 198 (5th Cir.1972) (evidentiary hearing not required where none of the critical facts are in dispute and facts alleged by defendant, if true, would not justify the relief requested), *cert. denied,* 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1973).

### C. *Wood's Arrest.*

■ Defendant Wood also submits that his arrest was illegal because it was executed without a warrant or made pursuant to a defective warrant. As discussed above, the Government states, and Wood does not contest, that the pickup truck Defendant was riding in was under surveillance by a special task force, for legitimate reasons, from before the time it left the Garland address that evening until it was stopped several blocks later. The police officers stopped the truck based on an articulable suspicion of criminal conduct, that is, founded upon their observations of the

headquarters and prior knowledge of Skinhead activity, *see Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), making such a stop proper. Upon running a computer check on the identification of the truck's occupants, the police ascertained that valid arrest warrants for traffic violations existed for Defendant Wood and another passenger. Wood's arrest, therefore, was made pursuant to a warrant and wholly proper, *see* U.S. Const. amend. IV; no evidence obtained pursuant to his arrest is required to be suppressed.

■ Again, no hearing is necessary for this determination. Wood's allegations regarding the impropriety of the police stop and the arrest warrants are unsupported and at best conclusory. *United States v. Poe, supra*, 462 F.2d at 197 (hearing required only where allegations of moving papers, including affidavits if any, are sufficiently definite, specific, detailed and non-conjectural so as to present a substantial claim); *United States v. Migely*, 596 F.2d 511, 514 (1st Cir.) (hearing on defendant's motion to suppress not required where facts alleged by defendant are insufficient to create an inference that a violation of his fourth amendment rights occurred, especially in light of Government's response negating possibility that evidence complained of had been discovered through an illegal search), *cert. denied*, 442 U.S. 943, 99 S.Ct. 2887, 61 L.Ed.2d 313 (1979).

D. *Conclusion.*

Defendant Wood's Motion to Suppress Fruits of Illegal Search and Seizure is, in all things, DENIED.

SO ORDERED.