UNITED STATES of America,
Plaintiff-Appellee,

v.

$64,000.00 IN UNITED STATES CURRENCY, Defendant-Appellant.

No. 82–3265.

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1984.

---

Gerber, Gerber & Agee, Hal Gerber, Memphis, Tenn., Gerber & Gerber, Martin S. Gerber, Chicago, Ill., for defendant-appellant.

D.H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before WISDOM, TATE and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

The United States government brought this suit under 21 U.S.C. § 881(a)(6)[1] to obtain the forfeiture of $64,000 in cash which it claimed that David Westoff had intended to use to purchase two pounds of cocaine. Westoff appeals from the district court's judgment for the government.

On September 6, 1979, Dale Gagnard, in Shreveport, Louisiana, telephoned David Westoff in Aspen, Colorado, and offered to sell him two pounds of cocaine for $30,000

---

1. Section 881(a)(6) provides:

"(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

". . . .

"(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate. any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

per pound. Gagnard had been arrested during an investigation of a drug trafficking conspiracy, and had agreed to cooperate in the Drug Enforcement Agency's ("D.E. A.") investigation of the conspiracy. Gagnard's conversation with Westoff on September 6 was made pursuant to this investigation, and the D.E.A. taped the call.

During this telephone conversation, Westoff agreed to purchase the cocaine. In a telephone call which Westoff made the next day to Gagnard, and which was also taped by the D.E.A., the two decided to meet in Salt Lake City to complete the transaction on Tuesday, September 11, 1979.

Acting according to the plans, Gagnard went to Salt Lake City the next Tuesday. He was accompanied by D.E.A. Special Agent, Ronald Hall, who carried a bag which was meant to appear to contain the two pounds of cocaine. The two men actually brought no cocaine with them.

Westoff, accompanied by a woman from Salt Lake City named Judith Saunders, met Hall and Gagnard in the Salt Lake City airport. The four discussed where the cocaine should be tested; whether at Saunders' office or at a motel room. Westoff stated that the easiest solution might be to test it in the airport rest room, so that Hall and Gagnard could return to Shreveport that night, without ever having to leave the airport. At that point, Agent Hall gave a signal to other D.E.A. agents who were in the airport, and Westoff was arrested. Hall had in his pocket a warrant for Westoff's arrest, although he did not give a copy of it to Westoff.

Robert Wadman, Deputy Commissioner of Public Safety for the State of Utah, aided in the Salt Lake City airport arrest. When he asked Saunders for her identification, she said it was in the car she had rented for the day. Wadman and Grant Larson, Division Chief for Narcotics and Liquor Law Enforcement for the State of Utah, accompanied Saunders to her car in the airport parking lot. Wadman asked Saunders if he could search her car and she consented. He searched the interior and then asked if there was anything in the trunk. Saunders told him that the trunk contained only some paintings and Westoff's luggage. Wadman then searched the trunk and took the carry-on bag, which Saunders had said was Westoff's, back to the airport terminal. Saunders had not protested the trunk search.

The agents then took Westoff and Saunders to the D.E.A. office where Special Agent Paull of the D.E.A., who had assisted in the arrest, questioned Westoff. Agent Paull asked for and received Westoff's permission to open the carry-on bag. Among the items in the bag was a large manila envelope. Westoff told the agents that a man rushing for a plane in the airport had handed it to him and had asked him to mail it. Agent Paull asked Westoff's permission to open the envelope, but Westoff refused, saying that he would like to talk to his attorney. Subsequently, Agent Hall took the envelope back to Shreveport where, based on his affidavit which described the Gagnard/Westoff telephone conversations and the meeting in Salt Lake City, he obtained a warrant authorizing him to search the envelope. The envelope, stamped and addressed to Ronald Garfield, Attorney, at an Aspen address, contained one "Teacher" magazine and $64,000 in one hundred dollar bills.

On September 21, 1979, Westoff was indicted for several offenses, including conspiring to import and to possess with intent to sell cocaine. On March 17, 1980, the district court held an evidentiary hearing on Westoff's motion to suppress the $64,000. The motion was denied.[2] Trial began on March 24, 1980 for the substantive offenses,

---

2. The primary evidence before the district court in the forfeiture proceeding was a transcript of the suppression hearing. The district court heard no live testimony at the forfeiture proceeding but, rather, based its decision on the testimony from the suppression hearing. Included in the suppression hearing transcript were the tapes (and transcript of those tapes) of the telephone conversations between Gagnard and Westoff which set up the attempted transaction in Salt Lake City.

and ended in a mistrial.[3] The case was reset for trial November 9, 1981. Westoff's counsel moved for permission to withdraw because Westoff had become indigent. The motion was granted on October 2, 1981, and the district court appointed counsel for Westoff.

On November 9, 1981, Westoff changed his plea to guilty. He pleaded guilty only to one count of the indictment under section 841(a)(1) for the substantive offense of possession with intent to distribute cocaine.

The forfeiture suit had been stayed pending disposition of the criminal charges against Westoff. After Westoff pleaded guilty in November 1981, the forfeiture suit was set for trial for March 22, 1982. Westoff retained private counsel throughout the forfeiture proceedings.

On March 5, 1982, Westoff's counsel filed a petition for a writ of habeas corpus *ad testificandum* requesting that the government pay to have Westoff, then imprisoned in the Federal Correctional Institution at Montgomery, Pennsylvania, brought to the forfeiture trial. Magistrate James M. Barton, to whom the petition had been directed, responded that Westoff would only be brought to the forfeiture trial if he or his attorneys posted the $5,000 that it was estimated it would cost to have Westoff present. Neither Westoff nor his attorneys posted the $5,000. They neither submitted an affidavit from Westoff declaring his indigency, nor asked for a continuance so that they could obtain such an affidavit. The district court held the trial without Westoff.

Westoff complains now (1) that there was no probable cause to arrest him, (2) that there was no substantial connection between the $64,000 and the criminal activity defined in the forfeiture statute, (3) that his Fourth Amendment rights were violated by the searches of the car, the bag, and the envelope, and (4) that the district court erred in refusing to issue a writ of habeas corpus *ad testificandum* to procure Westoff's presence, at government expense, at the forfeiture proceeding. We address each of Westoff's claims in turn and conclude that he can succeed on none of them.

THE ARREST

Westoff contends that he was unlawfully arrested and that the $64,000 of which the government sought forfeiture was therefore tainted. *See United States v. One Mercury Cougar XR–7,* 666 F.2d 228, 230 (5th Cir.1982) (exclusionary rule applies in forfeiture proceedings and probable cause for forfeiture cannot rest upon tainted evidence). Westoff's contentions that he was unlawfully arrested are simply meritless.

When he arrested Westoff, Agent Hall had an arrest warrant in his possession for Westoff's violation of 21 U.S.C. § 841(a)(1) and § 846.[4] Westoff's conversations with Gagnard and the preparations they made for the Salt Lake City rendezvous laid the predicate for the warrant. Contrary to Westoff's assertions, no requirement exists that a warrant may only be executed for conduct occurring at the time of the warrant's execution. We find no impropriety in the arrest of Westoff for conduct which had preceded the arrest. Although Westoff had not performed any "acts" in Salt Lake City which the warrant covered, the warrant, which covered acts performed in Aspen, Colorado and Shreve-

---

**3.** During the prosecution for his substantive offenses, Westoff moved to dismiss the indictment on double jeopardy grounds because he was tried for violations of both 21 U.S.C. § 846 and 21 U.S.C. § 963 under one count of the indictment. The district court denied the motion and this Court affirmed. *See United States v. Westoff,* 653 F.2d 1047 (5th Cir.1981).

**4.** Section 841(a)(1) provides:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

"(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."

Section 846 provides:

"Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

port, Louisiana, could have been "executed ... at any place within the jurisdiction of the United States." Fed.R.Crim.P. 4(d)(2). *See also Gill v. United States,* 421 F.2d 1353, 1354–55 (5th Cir.), *cert. denied,* 400 U.S. 851, 91 S.Ct. 85, 27 L.Ed.2d 89 (1970).[5] The officer need not have the warrant in his possession, though "upon request" he shall show it to the defendant "as soon as possible." Fed.R.Crim.P. 4(d)(3). Here, there is no evidence of such a request. Moreover, failure to comply with Rule 4(d)(3) is not ordinarily grounds for suppression. *See United States v. McKenzie,* 446 F.2d 949, 954 (6th Cir.1971).

## THE LINK BETWEEN THE $64,000 AND THE TITLE 21 CRIME

■ The government's burden under the forfeiture statute, 21 U.S.C. § 881(a)(6), is to show probable cause for belief that a substantial connection exists between the property to be forfeited and a crime under Title 21 of the United States Code. *United States v. $364,960.00 in United States Currency,* 661 F.2d 319, 323 (5th Cir.1981). Probable cause is in turn defined as "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980).

Westoff argues that because Gagnard and the government agents had no cocaine with them in Salt Lake City, no transaction could have been finalized, and Westoff committed no crime. Instead, he argues, the government only showed his preparation to commit an offense, and that showing was insufficient to sustain the forfeiture, since no nexus between the $64,000 and a Title 21 crime was established.

■ The government's proof of Westoff's criminal activity in attempting to procure the cocaine was substantial and uncontradicted—the government showed that Westoff and Gagnard had discussed the amount and price of the cocaine, had arranged to meet and had met in Salt Lake City, and had discussed, in Salt Lake City, the exchange and how to effect it. Finally, Westoff had $64,000 in his baggage—$60,000 for the two pounds of cocaine, and $2,000 per pound commission for himself.[6] Clearly, Westoff was attempting to obtain the cocaine. Judith Saunders' assisting Westoff in Salt Lake City by her presence and by keeping Westoff's bag in her car, coupled with Westoff's conversation with her regarding where to test the cocaine, further the government's argument that Westoff was conspiring to procure the cocaine. Westoff's contention that he committed no crime because the government had no cocaine to sell to him is a defense of factual impossibility which must fail. W. LaFave & A. Scott, *Handbook on Criminal Law* 440–42 (1972). The crime of conspiring or attempting to possess cocaine with intent to distribute does not require actual possession. The conspiracy offenses denounced by 21 U.S.C. §§ 846 and 963 do not require proof of an overt act. *United States v. Pool,* 660 F.2d 547, 559–60 (5th Cir.1981). The government showed Westoff's intent, his act of conspiring with Saunders, and his acts of attempting to obtain the cocaine. The cocaine's unavailability does not defeat the government's showing, for forfeiture purposes, that Westoff conspired and attempted to possess the cocaine. *See, e.g., United States v. Rueter,* 536 F.2d 296, 298 (9th Cir.1976) (defendants convicted of conspiring to possess hashish

---

5. We note that even if Agent Hall had not had a warrant for Westoff's arrest, it appears that the arrest would likely have been lawful. When the agents arrested Westoff, they had probable cause to believe that he was attempting to purchase cocaine, in violation of section 846. He and Gagnard were discussing the transaction and where to test the cocaine. There is no indication that in meeting Gagnard in Salt Lake City, Westoff had any purpose in mind other than completing the cocaine sale.

6. At the forfeiture proceeding, the district court admitted into evidence several pages of the transcript from the trial of Westoff's substantive offenses. The transcript includes testimony by Gagnard that Westoff had told him that he received $2,000 per pound commission for each pound of cocaine he purchased.

with intent to distribute were not entitled to defense of impossibility based on the D.E.A. agents' failure to actually provide the drugs). The government unquestionably proved that the $64,000 was connected to Westoff's acts in furtherance of his goal of possessing the cocaine with intent to distribute.[7]

## THE SEARCHES

Westoff contends that the government agents' search of Saunders' car, the search of the bag, and the search of the manila envelope which contained the $64,000 all violated his rights under the Fourth Amendment. We agree with the district court that none of the searches violated Westoff's constitutional rights. The district court found that Saunders had given her consent to search the car which she had rented. Although Saunders testified that she did not recall giving her consent, the district court credited the testimony of two agents, one who had searched the car and one who had been present during the search. Both of these agents testified that Saunders had consented to the search of her rental car. The district court's finding of consent is not clearly erroneous. *United States v. Phillips,* 664 F.2d 971, 1023 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Because the search was consensual, it did not violate Westoff's Fourth Amendment rights. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973).[8]

Westoff also asserts that his consent to the search of his bag was not voluntary because when he consented to the search, he was handcuffed and not informed of his right to refuse to consent. To determine whether a defendant's consent was voluntary, a court must look to the totality of all the circumstances. *Id.* at 227. Also, "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." *Id.* This Court has identified six factors, "none of which is . . . controlling," which a court is to take into consideration in determining whether a defendant's consent to a search was voluntary: voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found. *United States v. Phillips,* 664 F.2d at 1023–24.

The district court examined the six factors and concluded that the facts indicated that Westoff had given his consent freely to the search of the bag. The court noted first that, of course, Westoff had not

---

7. Westoff also urges, for the first time on appeal, that section 881(a)(6) of the forfeiture statute is unconstitutional because it allows a forfeiture of property based on a defendant's intent alone without requiring that he commit an act to carry that intent into effect. Generally, federal appellate courts do not consider issues which a party has not raised before the district court. "[W]here 'injustice might otherwise result,'" an appellate court may, in its discretion, consider the issue. *Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). We find that no injustice would result by our refusal to consider this issue, particularly since the government showed the $64,000 was connected not merely with Westoff's "intent" to purchase cocaine, but with his acts in furtherance of his attempted purchase and his conspiring to purchase.

8. Whether Westoff even had standing to challenge the search of the rented car is questionable. To determine a person's standing to challenge a search, a court must consider "not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." *United States v. Salvucci,* 448 U.S. 83, 92–93, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980). In light of *Salvucci,* this Court has since held that a defendant "had no standing to contest the search [of another person's car] since he had no legitimate expectation of privacy in a car registered to someone else when he was not even a passenger in it when arrested." *United States v. Arce,* 633 F.2d 689, 694 (5th Cir.1980), *cert. denied,* 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 351 (1981). The same rationale would appear to apply here.

been voluntarily in custody. The court made no findings expressly in terms of Westoff's education and intelligence. It did find, however, that Westoff had had a "cocky" attitude during the episode with the D.E.A. agents, that the fact that he had not consented to a search of the manila envelope showed that he had known he had a right to refuse to consent to a search of his bag, that the police had not been impermissibly coercive, and that Westoff's statement to the agents that the manila envelope was not his showed that he had likely believed that a search of his bag would reveal no incriminating evidence. Obviously, Westoff was no "babe in the woods." We believe that the district court did not err in its evaluation of the factors, nor in its conclusion that the consent Westoff had given to search his bag was voluntary.

■ Finally, Westoff contends that the search of the manila envelope found in his bag was illegal because the warrant authorizing Agent Hall to search the envelope had been based on an affidavit replete with material falsehoods made with a reckless disregard for the truth. See *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). Although the affidavit might have been, as the district court found, "inartfully drawn," we would characterize any flaws in the affidavit as minor inaccuracies rather than distortions of material fact. *United States v. Arce*, 633 F.2d 689, 695 (5th Cir.1980), *cert. denied*, 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 351 (1981). We agree with the district court's finding that Agent Hall's line-by-line explanation at the suppression hearing of what he meant in the affidavit was reasonable, and that the evidence supported his statements in his affidavit. We find no error in the district court's determination that the warrant to search the envelope was legitimately obtained and that therefore the search of the envelope was legal.

■ Nor can Westoff succeed with his argument that the warrant authorizing the search of the manila envelope was invalid because it was obtained and executed in Louisiana although the envelope had been seized in Salt Lake City. Westoff cites no authority to support his position that the agents somehow violated his constitutional rights by transporting the envelope from Utah to Louisiana and obtaining and executing the search warrant there. Similarly, our research has revealed no precedent for this position. The envelope and its contents were in Louisiana when the warrant was issued, and Fed.R.Crim.P. 41(a) authorizes the issuance of a warrant "by a federal magistrate or a judge ... within the district wherein the property is located ...." We conclude that Rule 41(a) authorized the issuance of the warrant to search the envelope in this case, or that at least any irregularity in this respect is not grounds for suppression. *See United States v. McKenzie*, 446 F.2d at 954. There is no reason to believe that a magistrate in Salt Lake City would not have issued the warrant.

## THE WRIT OF HABEAS CORPUS *AD TESTIFICANDUM*

Before the forfeiture trial, Westoff filed a petition for a writ of habeas corpus *ad testificandum* which would have required the government to send him from the Federal Correctional Institution in Pennsylvania to the forfeiture trial in Louisiana, at government expense. Westoff now contends that the magistrate's denial of the petition for the writ was reversible error.

■ The determination whether to issue a writ of habeas corpus *ad testificandum* is within the discretion of the district court. *ITEL Capital Corp. v. Dennis Mining Supply & Equipment, Inc.*, 651 F.2d 405 (5th Cir.1981); *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir.1977). In exercising this discretion, the court is to consider "whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted." *Ballard*, 557 F.2d at 480.

Westoff has made no showing that his presence would "substantially further the resolution of [his] case." Indeed, he has not shown how he might have been prejudiced in the least by his inability to appear at the trial. In a letter from the magistrate to Westoff's counsel, which Westoff introduced into evidence at the forfeiture trial, the magistrate stated that Westoff's counsel had told him that even if Westoff were present at the forfeiture trial, he might not testify. Additionally, Westoff's attorneys put on an admirable and substantial defense at the forfeiture trial, and Westoff has not shown how his absence hampered them in any way. This is confirmed by the fact that no effort was made to take his deposition.

The expenses of transporting Westoff to Louisiana for the forfeiture trial were estimated to be $5,000. Although Westoff's petition for the writ requested that the government spend this substantial sum to secure his presence at the forfeiture proceeding, Westoff filed no formal affidavit of poverty to supplement his petition. Nor was any continuance requested after the district court indicated that it would not merely assume Westoff was indigent absent some such proof. Moreover, Westoff's retention of private counsel during the entire forfeiture proceeding tends to rebut any inference that Westoff was indigent at the time of the forfeiture proceeding. Under all these circumstances, we must hold that the magistrate's refusal to issue a writ of habeas corpus *ad testificandum* unless Westoff's counsel posted the $5,000 necessary expenses for Westoff's presence, was not an abuse of discretion such that any reversible error is presented in this connection.

In sum, we have found that Westoff's arrest was legal, that the government sustained its burden of showing a link between the $64,000 forfeited and a Title 21 crime, that the searches of the car, the bag, and the manila envelope were properly found to be legal, and that under the circumstances no reversible error is presented by the district court's refusal, in its discretion, to issue a writ of habeas corpus *ad testificandum* to secure Westoff's presence at the forfeiture proceeding. Therefore, we affirm the judgment below.

AFFIRMED.