Jane ROE, Mary Moe, National Abortion Rights Action League of Pennsylvania, Planned Parenthood of Southeastern Pennsylvania, Elizabeth Blackwell Health Center for Women, Reproductive Health and Counseling Center, Women's Suburban Clinic, Allentown Women's Center, Northeast Women's Center, Women's Medical Services, Dr. Allen Kline

v.

OPERATION RESCUE, Randall Terry, Reverend James P. Lisante, Pro Life Nonviolent Action League of Bronx, NY, Thomas Herlihy, Pro Life Nonviolent Action Project of Philadelphia, Michael McMonagle, Chester County Citizens Concerned About Life, John J. O'Brien, Council for the Sanctity of Human Life, Joseph Foreman, Advocates for Life, Andrew Burnett, American Life League, Judie Brown, Direct Action Committee, Kathy Hoffer, Craig Hoffer, Life and Family Center, Andrew Schulberg, Pro Life Action League, Joseph Scheidler, Pro Life Action League, John Ryan, Omaha Christian Action Council, Denny Hartford, Pro Life Nonviolent Action Project of Washington, D.C., John Cavanaugh O'Keefe, John Smith(s) and Jane Smith(s), the Last Two Being Fictitious Names, the Real Names of Said Defendants Being Presently Unknown to Plaintiffs', said Fictitious Names Being Intended to Designate Organizations or Persons Who are Members of Defendant Organizations, and Others Acting in Concert With Any of the Defendants Who are Engaging in, or Intend to Engage in, the Conduct Complained of Organizations, and Others Acting in Concert With Any of the Defendants Who are Engaging in, or Intend to Engage in, the Conduct Complained of Herein.

Appeal of Michael McMONAGLE.

No. 90–1088.

United States Court of Appeals, Third Circuit.

Argued Sept. 26, 1990.

Decided Dec. 10, 1990.

Daniel M. Gray (argued) Philadelphia, Pa., Joseph F. Wusinich, III, West Chester, Pa., for appellant.

Linda J. Wharton (argued), Women's Law Project, Anna–Maria Marshall, Mary Ellen Maatman, Beth E. Moskow, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellees.

Before SLOVITER, BECKER and ROSENN, Circuit Judges.

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises a classic issue relating to the tension that arises between exemplary efforts made by diligent and conscientious trial courts to manage their calendar in the expedition of justice, and the constitutional requirement of the procedural process due a defendant in a civil contempt hearing.

The contempt charge underlying this appeal followed previous violations by the defendant of the trial court's order enjoining him from obstructing ingress or egress from any facility at which abortions are performed in the Philadelphia metropolitan area. The trial court found defendant to be in contempt of court and levied conditional fines. The trial court rejected Michael McMonagle's motion to dismiss plaintiff's current action to hold him in civil contempt, and after a series of preliminary motions by the parties, fixed a date for hearing on the latest contempt motion.

The court initially granted a number of continuances and, when it learned that at the time fixed for the contempt hearing the defendant would be in the throes of a six-month confinement in Atlanta, Georgia, for charges arising from his anti-abortion activities there, it granted the defendant another continuance expressly so that he could arrange to attend the hearing. McMonagle never appeared, claiming that the cost of transportation while in custody presented a financial hardship. The court held that McMonagle had waived his right to be present and adjudged him in contempt and imposed a fine. McMonagle appeals, claiming the contempt hearing violated his due process rights under the fifth amendment of the United States Constitution. We affirm.

I.

On June 30, 1988, plaintiffs, Philadelphia-area abortion providers (the providers), obtained a temporary restraining order (TRO) in the United States District Court for the Eastern District of Pennsylvania enjoining the defendant, including McMonagle per-

sonally, from "blocking, obstructing ingress or egress from any facility at which abortions are performed in the City of Philadelphia and metropolitan area...." McMonagle, the paid Executive Director of the Pro–Life Coalition of Southeastern Pennsylvania, was a named defendant in another case recently heard in this court also involving injunctive proceedings. *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342, 1345 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989). The terms of the TRO were extended on two occasions and a permanent injunction issued on March 21, 1989.

During the week of July 4, 1988, despite the TRO in effect at that time, the defendant and others blockaded the facilities of several abortion providers. By order dated December 5, 1988, the district court found McMonagle in civil contempt for violation of the TRO and imposed conditional fines in the amount of $10,000 for two violations. The court suspended the fines on the condition that any future violation would trigger the fines based on past violations and a $5,000 fine for each current violation.

On January 21, 1989, McMonagle participated in a blockade of the Reproductive Health and Counseling Center (RHCC) in Chester, Pennsylvania. On February 8, 1989, the defendant participated in another blockade at the Women's Suburban Clinic (WSC) in Paoli, Pennsylvania. As a result, plaintiffs filed another motion for civil contempt on July 7, 1989.

The court initially scheduled the hearing on the contempt motion for September 8, 1989. At defendant's request, the court continued that hearing to September 28, 1989. The court granted another continuance on September 21 to allow defendants time to respond to plaintiff's discovery requests. Beginning October 16, the contempt hearing was subject to call on 24 hours notice, until November 15, 1989, when the court scheduled the hearing for November 21, 1989.

McMonagle filed another motion for continuance on November 17, 1989, stating that he could not attend the contempt hearing scheduled for November 21, 1989, because he was incarcerated in the Fulton County prison in Atlanta, Georgia. He was under sentence there for six months beginning on November 15, 1989, for refusal to pay a fine for trespass. The trial court in this proceeding again granted McMonagle's motion for a continuance "so that defense counsel may arrange for the defendant's presence at the hearing," which the court rescheduled for December 13, 1989.

On December 11, 1989, defendant requested yet another continuance. This motion included an exhibit letter from his lawyer stating that he would be filing a motion to modify McMonagle's Georgia prison sentence and/or the appeal bond. Counsel also stated:

> On information and belief, Defendant Mr. McMonagle also avers that he has reason to believe the United States Marshal is asking for $2,000 in expenses in order to transfer and transport *Mr. Terry* from the State of Georgia to be present in court in Philadelphia on December 13, 1989. This presents a financial hardship to Mr. McMonagle and is somewhat impractical.

Mr. Terry is the spokesperson for the defendant Operation Rescue; no averments were made with regard to the cost to Mr. McMonagle who failed to supply any supporting affidavits or documentation of these facts. On December 18, 1989, the court held a hearing regarding defendant's motion for continuance. At this hearing, defense counsel stated that the U.S. Marshal told him that there was a $2,000 deposit and guarantee of additional expenses required for the transportation of McMonagle, but again failed to present any substantiation of this figure or of any financial hardship. The court denied defendant's motion for another continuance.

On December 21, 1989, the court held the contempt hearing without the defendant, although his counsel was present. The court concluded that "I am satisfied that he [McMonagle] has waived his right to be present here and I want to proceed with the merits of the hearing." At the hearing, defense counsel did not question the

accuracy of the testimony given by the plaintiffs' witnesses regarding McMonagle's violation of the injunction. Cross-examination consisted of questioning whether the witnesses were aware that defendant was incarcerated, verification of the witnesses' identification of the defendant, ascertaining whether the escorts advised pregnant women of their option to have the baby, and inquiring whether the witnesses could recall what hymn the protesters were singing. Defense counsel objected to the introduction of McMonagle's arrest and conviction record for trespass of the abortion facilities on the pertinent dates on the ground that he had not pled guilty to the charges. The court overruled the objections.

The court found the defendant in civil contempt of its orders by reason of his activities on January 21 and February 8, 1989. The court withdrew the suspension on fines previously imposed on December 5, 1988, and imposed an additional $5,000 fine for each current violation, amounting to $10,000. The court therefore ordered the defendant to pay $20,000 in fines by January 31, 1990. 730 F.Supp. 656.

Upon the defendant's failure to pay by January 31, 1990, plaintiffs filed a motion requesting McMonagle's imprisonment. On March 19, 1990, the court denied plaintiff's motion, finding that McMonagle was financially unable to pay the fines.

## II.

■ Before considering whether defendant waived his due process rights, we must first determine what process is due in this case. As a threshold matter, the particular requirements of due process depend upon whether the contempt proceeding was criminal or civil. The defendant contends, although he provides little or no substantiation, that the contempt proceeding was criminal in nature. This court must independently determine the issue of whether a contempt order is properly characterized as civil or criminal. *Remington Rand Corp.-Delaware v. Business Systems*, 830 F.2d 1256, 1257–58 (3d Cir.1987).

In determining whether the proceeding is civil or criminal, the "critical features are the substance of the proceeding and the character of the relief that the proceeding will afford." *Hicks v. Feiock*, 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988). The primary purpose of criminal contempt is punitive, to vindicate the authority of the court and thus is characterized by the imposition of an unconditional fine or sentence. *Id.* at 631–35, 108 S.Ct. at 1429–31. In comparison, the primary purpose of civil contempt is remedial and for the benefit of the complainant. *Id.* at 631, 108 S.Ct. at 630–32. When a fine or prison sentence is made conditional upon the defendant's actions, it is civil because it is specifically designed to compel the performance of an affirmative act required by the court. *Id.* at 632, 108 S.Ct. at 1429–30. In the original contempt order of December 5, 1988, the court suspended the fines on the condition that any future violation would trigger the reimposition of the fines. The suspension of fines conditioned on future compliance with the court's injunction rendered the contempt order coercive and thus civil. *Roe v. Operation Rescue*, 919 F.2d 857 (3d Cir.1990).

The second contempt hearing held on December 21, 1989, was also civil in nature. At this hearing, the court reinstated the suspended fines and imposed additional fines for the current violations. Although the court provided no opportunity to purge these fines, this did not transform the proceeding into a criminal one. In *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1273 (9th Cir.1976), the court stated that "whenever a compliance fine is assessed and an opportunity given to purge, the failure to purge will bring about a due date ... [t]he occurrence of the due date does not transform civil proceedings, whose sole aim is to secure compliance, into a criminal proceeding." Thus, the lack of opportunity to purge in the second contempt hearing did not transform the hearing into one of a criminal nature.

Additional factors point to the civil nature of the proceedings at issue. The

plaintiffs, rather than the court, instigated the proceedings. *Latrobe Steel Co. v. United Steelworkers, Etc.*, 545 F.2d 1336, 1343–44 (3d Cir.1976) (Civil contempt proceedings are instituted primarily on the motion of the plaintiff and are part of the underlying action.) Also, the principal beneficiary of the defendant's compliance was the plaintiffs and not the court or the Government. *Id.* at 1344.

■ Thus, the defendant McMonagle is entitled to due process required for a civil proceeding.[1] *Hicks v. Feiock*, 485 U.S. at 638, 108 S.Ct. at 1433. Due process generally requires an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case.

Due process does not, of course, require that the defendant in every civil case actually have a hearing on the merits. A State, can, for example, enter a default judgment against a defendant who, after adequate notice, fails to make a timely appearance, or who, without justifiable excuse, violates a procedural rule requiring the production of evidence necessary for orderly adjudication. What the Constitution does require is "an *opportunity* ... granted at a meaningful time and in a meaningful manner...." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (emphasis added).

*Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1970) (citations omitted). Defendant does not contend that the court failed to give him adequate notice of the hearing but rather that he was denied an opportunity to be present at the contempt hearing in violation of his due process rights.

■ Whether the defendant waived his right to be present at the hearing is a mixed question of law and fact. Because the facts are undisputed, our review of whether McMonagle's actions constituted waiver is plenary. *Ram Construction Co. v. American States Insurance Co.*, 749 F.2d 1049, 1053 (3rd Cir.1984). Due process is waived when there is an intentional relinquishment of a known right. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The defendant does not claim that he was uninformed of his right to be present, but that his relinquishment was involuntary. Whether there has been an intentional relinquishment depends on the facts and circumstances of each case. *Id.*

The defendant's incarceration in a Georgia prison at the time of the contempt hearing did not under the circumstances of this case present an insurmountable bar to his attendance. Even though the district court had granted yet another continuance, this last one for the express purpose of allowing counsel to obtain defendant's presence at the hearing, McMonagle made no attempt to utilize any of the number of alternatives available to secure his presence at the hearing. The trial court patiently afforded him opportunity after opportunity to attend the hearing. By contrast, the record is devoid of evidence that the defendant extended any effort to arrange for his attendance at the hearing. Such indifference or inaction, when the defendant is fully aware of his due process rights to be present at the contempt hearing, constitutes the intentional relinquishment of such rights.

The defendant was fully aware of the following alternatives for securing his release from prison to attend the hearing. He was no novice to injunctive or contempt proceedings.[2] First, defendant could have

---

1. If the contempt proceeding were criminal, the defendant would have been entitled to notice and a hearing, as well as "the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt." *Hicks v. Feiock*, 485 U.S. at 632, 108 S.Ct. at 1430.

2. *See, e.g., National Organization for Women v. Operation Rescue*, 914 F.2d 582 (4th Cir.1990); *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342 (3d Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989); *Klebanoff v. McMonagle*, 380 Pa.Super. 545, 552 A.2d 677 (1988), *appeal denied*, 522 Pa. 620, 563 A.2d 888 (1989); *Crozer–Chester Medical Center v. May*, 366 Pa.Super. 265, 531 A.2d 2 (1986);

obtained his temporary release from the Fulton County Jail by posting a refundable bond.[3] Second, he could have petitioned the district court for a writ of habeas corpus *ad testificandum* pursuant to 28 U.S.C. section 2241(c)(5) if he wished to testify at the hearing.[4] If defendant did not wish to testify, he could have petitioned the district court for a writ of habeas corpus pursuant to the All Writs Act, 28 U.S.C. section 1651. *Cf. Price v. Johnston,* 334 U.S. 266, 284, 68 S.Ct. 1049, 1059, 92 L.Ed. 1356 (1948) (Court held that section 1651 gives federal appeals court power to issue writ of habeas corpus to permit state prisoner to come forward to argue his own appeal.)

McMonagle never denied that he was able to utilize the above procedures, but only that the cost "represented a financial hardship" and was "somewhat impractical." First, we note that the defendant could have obtained his release by posting a refundable bond; he ultimately secured his release a few days after the hearing by a refundable bond posted by his sister. Second, the defendant's claim that a writ of habeas corpus was not a viable alternative is not supported by the record. He represented the cost of a writ to be a $2,000 deposit and a guarantee of additional expenses required.[5] This figure was not substantiated by documentary evidence, nor did defendant provide even a single affida-

vit supporting his claim of financial hardship. The district court is not required to suspend its docket upon mere assertions by counsel that the cost of attending the contempt hearing represents a financial hardship. *Cf. United States v. $64,000.00 in United States Currency,* 722 F.2d 239 (5th Cir.1984) (In upholding district court's denial of a petition for a writ of habeas corpus *ad testificandum* unless defendant posted $5,000 bond, court noted that defendant never submitted formal affidavit of poverty.).

The defendant's request after a number of continuances already granted by the court for an indefinite continuance until he was released from prison represented not only an inconvenience to the court, as well as possible prejudice to the plaintiffs, but also a possibility for a public perception of the absence of speedy judicial justice.

### III.

In sum, we hold that the defendant's failure to avail himself of the opportunity at a meaningful time and in a meaningful manner for a hearing constituted a waiver of his right to be present at the civil contempt hearing afforded him. The defendant offered no proof of his inability to attend despite the continuance specifically granted to him for the express purpose of

*appeal dismissed,* 520 Pa. 62, 550 A.2d 196 (1988).

**3.** According to defendant's own affidavit filed on March 6, 1990, as Exhibit A to his response to plaintiffs' motion to enforce sanctions, he was released from prison a few days after the contempt hearing on a refundable appeal bond posted by his sister.

**4.** It is unquestioned that a federal court has authority to issue a writ of habeas corpus *ad testificandum* to secure the testimony of prisoners in custody under a sentence of a state court. *See e.g. Pennsylvania Bureau of Correction v. United States Marshals Service,* 474 U.S. 34, 39, 106 S.Ct. 355, 359, 88 L.Ed.2d 189 (1985). District courts have issued these writs in civil proceedings to obtain the presence of prisoners who are incarcerated outside of the territorial

jurisdiction of the district court. *Muhammad v. Warden, Baltimore City Jail,* 849 F.2d 107, 114 (4th Cir.1988); *Itel Capital Corp. v. Dennis Mining Supply & Equipment, Inc.,* 651 F.2d 405, 406 (5th Cir.1981); *Stone v. Morris,* 546 F.2d 730 (7th Cir.1976).

**5.** It is within the district court's discretion, upon a defendant's proof of indigency and confinement in a state prison, to issue a writ of habeas corpus *ad testificandum* requiring his production as a witness or party in a federal judicial proceeding at government expense. *See, e.g., Pennsylvania Bureau of Corrections v. U.S. Marshals,* 474 U.S. 34, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985). *Cf. United States v. $64,000 in U.S. Currency,* 722 F.2d 239, 246–47 (5th Cir.1984). Had appellant petitioned the court for such a writ, this alternative would have been available to the court.

allowing him to make the necessary arrangements.

Accordingly, the order of the district court holding the defendant in civil contempt and adjudicating the imposition of fines will be affirmed. Costs taxed against appellant.

