EDWARDS, Judge.
Appellant-defendant, Carolyn Nelson, appeals the trial court’s judgment ordering a 9MM gun and $15,156 forfeited pursuant to the Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989; LSA-R.S. 40:2601, et seq. We reverse.
FACTS AND PROCEDURAL BACKGROUND
The trial court provided the following written reasons for judgment:
These consolidated cases are brought under the forfeiture procedures set forth in R.S. 40:2601, et seq. Notices of pending forfeiture were filed by the District Attorney, and answered by the defendant. The eases were then set for trial.
The initial evidence presented by the State consisted of the testimony of a police officer, whose account was that he had received a report from a reliable confidential informant who had recently been in the house which ultimately proved to have been owned by Carolyn Nelson, and had observed a large amount of cocaine in the house. Based on this information, a search warrant was obtained and the house was searched. This search resulted in the discovery and seizure of forty-nine rocks of crack cocaine in one bedroom of the house. A personal-sized safe or lockbox was also found in this bedroom which contained some $851.00 in cash_ [The $851.00 is the subject of another forfeiture proceeding.]
A trained dog used in narcotics operations was brought to the house. This dog made a positive “hit” on a blue trunk similar to a footlocker in another bedroom of the house. This trunk was opened by the police, and a large quantity of cash, as well as other items, were located therein.
The police officer testified that the amount of money and denominations of bills found in the trunk included forty-five (45) one hundred dollar bills, seven (7) fifty dollar bills, four hundred twelve (412) twenty dollar bills, one hundred forty-two *116 (142) ten dollar bills, [one hundred seventeen (117) ] five dollar bills, and sixty-one (61) one dollar bills. The trunk also contained a [briefcase] which had invoices from a building material dealer, and plans or [blueprints] of a house. Also located in the trunk was a spiral notebook containing a number of entries. The officer testified that in his experience, the entries, which consisted of single names or nicknames with amounts of money adjacent to them [were] similar to the ledgers or accounts maintained by drug traffickers with persons who were street dealers as to the amounts of money or narcotics each street dealer might have. Also found in the same bedroom as the blue trunk was an automatic pistol.
Another police officer who was the evidence officer for the arresting police agency produced records from the State Police Crime Laboratory confirming that the substance tested was actually cocaine, and certain fingerprint reports. These fingerprint reports indicated that Michael Nelson’s fingerprints were on a white bag found in the footlocker, and on the spiral notebook and [briefcase] which were contained in same. The fingerprints of Regina Mason, Michael’s girlfriend, were also found on a plastic bag in the footlocker.
Photographs of the evidence seized, including the contents of the footlocker, were submitted into evidence. These photographs showed that the money contained in the footlocker was located partially in bank envelopes, and partially folded into smaller quantities and placed in clear plastic bags.
Finally, the evidence adduced indicated that there was no pending criminal proceedings against Carolyn Nelson, although apparently there were pending charges against Michael Nelson, her son. Michael Nelson had arrived while the search was being conducted, and, according to the testimony of the officer, Michael Nelson had, after being advised of his rights, given an oral statement that all of the cocaine and money belonged to him.
Based upon the above evidence, this Court ruled at trial that the State had established probable cause under the provisions of R.S. 40:2612G, and thereafter,' that the trial would be concerned with the claims of Carolyn Nelson that her interest in the property was not subject to forfeiture. However, the Court did grant defendant’s motion for directed verdict to the effect that the State had not established probable cause with respect to the 1982 Datsun 280ZX automobile, and ordered this vehicle released from the forfeiture.
Carolyn Nelson testified that she had owned the house in question outright. She testified that she had purchased the property with funds derived from an insurance settlement resulting from the death of her former husband. A deed to the property dated May 28, 1989, and a receipt and release showing receipt of $78,657.61 from the settlement dated May 22, 1987, was introduced into evidence, substantiating this claim.
Ms. Nelson further testified that sometime in 1990, she had decided to build a new house, and that construction had already started on the house. She realized that she would not have sufficient funds to complete the house, and contacted a mortgage broker, Anthony Valenti, to attempt to obtain financing. Mr. Valenti also testified at the trial. Since construction on the new house had already begun, and therefore no clear lien certificate could be obtained, Mr. Valenti determined that he could provide financing through a mortgage on Ms. Nelson’s existing residence. The stated purpose of the loan was to obtain funds which, according to the loan application submitted into evidence, were to “assist son in building his house[.”]
The loan was apparently closed on or about July 24, 1990, but the loan was not funded until the three-day rescission period had taken place. Ms. Nelson thereafter asked Mr. Valenti’s assistance in cashing the check for the loan proceeds, and he met her at the bank on which the check was drawn. The bank, with his assistance, cashed the check and provided the proceeds to Ms. Nelson. According to Mr. Valenti, most of the proceeds were given in one hundred dollar bills.
*117 Mr. Valenti further testified that the first payment was due on the new mortgage on September 1, but that these payments were not made. He stated that he and another person interested in the mortgage had provided the initial installments, and that he got in touch with Ms. Nelson. She related what had taken place, and apparently, through some agreement with her present attorney, the holder of the mortgage has agreed to forego any foreclosure proceedings on the property, although only three payments have been made since September of 1990.
Mr. Coates, a contractor, testified that Michael Nelson had contacted him desiring that he “black in” the new house. He stated that he started this work sometime in June of 1990, but at some point in July discontinued the job due to not being provided adequate materials and due to another job. He stated that he had been made progress payments which were always in cash, and that on two occasions Michael Nelson had paid him directly in cash. Mr. Coates had gone back by the house on the morning of the trial to view it. He stated that it was still not completed although some additional work had been done since he left the job.
Ms. Nelson’s testimony was to the effect that the lot on which the new house was to be constructed had been purchased by her, but title to the property had been placed into the name of Regina Mason, because the real estate broker handling the sale stated that some identification was necessary to confirm the purchase. Ms. Nelson had no identification but Ms. Mason did. Ms. Nelson testified that, in addition to being her son Michael’s girlfriend, Regina Mason engaged in the operation of a beauty shop along with Ms. Nelson. She also testified that Ms. Mason and Michael periodically lived in her existing house.
Ms. Nelson testified that after she had cashed the check for the loan proceeds, the cash was placed into the blue footlocker which was kept in a bedroom separate from her own in the house, because the door to Ms. Nelson’s bedroom did not lock, whereas the door to the bedroom in which the footlocker was kept did have a lock. She testified that the footlocker also had a lock, and that only herself and Ms. Mason had keys. She stated that she was not good at mathematics and that Ms. Mason helped her keep account of her payments and debts.
Ms. Nelson testified that she had no knowledge of the narcotics being located in the house and denied that any drug trafficking took place from the house. She claimed ownership of the money through the loan proceeds and denied that she was holding the money as agent for any other person. In fact, the entire litany of exemptions listed in R.S. 40:[2605], was testified to by Ms. Nelson.
As to the automatic pistol found in the house, Lawrence McGowan, Ms. Nelson’s former husband, testified that this gun belonged to him and that he had left it with Ms. Nelson when the parties separated for her own protection. He likewise denied any knowledge of narcotics trafficking and, again, both he and Ms. Nelson testified as to all matters constituting exemptions under R.S. 40:[2605],
The Seizure and Controlled Dangerous Substances Property Forfeiture Act provides the following guidelines [in R.S. 40:2611] for actions initiated thereunder.
G.
The fact that money or a negotiable instrument was found in proximity to contraband or an instrumentality of conduct giving rise to forfeiture shall give rise to the “permissible inference” that the money or negotiable instrument was the proceeds of conduct giving rise to forfeiture or was used or intended to be used to facilitate the conduct. (Quotation supplied.)
No definition of “permissible inference” is supplied.
The provisions of Sub-Section H of this section read as follows:
There shall also be a rebuttable presumption that any property of a person is subject to forfeiture under this [Section if the [s]tate establishes all of the following:
*118 (1) [T]hat the person has engaged in conduct giving rise to forfeiture^]
(2) [T]hat the property was acquired by the person during the period of the conduct giving rise to forfeiture or within a reasonable time after that period[.]
(3) [T]hat there was no likely source for the property other than the conduct giving rise to forfeiture.
Further, under the provisions of R.S. 40:2612G, as above referred to, once the State shows probable cause for the seizure, the claimant has the burden of showing by a preponderance of the evidence that the claimant’s interest in the property is not subject to forfeiture.
Applying these statutory guidelines to the case at bar, there would certainly be a “permissible inference” that the property seized was in proximity to the contraband. However, the State has failed to show that Carolyn Nelson engaged in conduct giving rise to the forfeiture, or that there was no likely source for the property in the form of the cash and the immovable property other than the conduct giving rise to the forfeiture. Accordingly, no presumption exists as such. Finally, Ms. Nelson has the burden of proving her claims by a preponderance of the evidence.
Viewing the evidence in its entirety, this Court finds that the most believable facts were that Ms. Nelson had no direct knowledge that any drug trafficking or storage was taking place in her house. As such, her house is not subject to forfeiture. However, with respect to the cash discovered in the house, the fact that the stated purpose of the loan was to assist her son in constructing the new house, the fact that her son had made prior cash payments to the sub-contractor, that her son’s girlfriend in whose name the title to the lot on which the new house was being constructed had access to the footlocker and cash contents thereon, (sic) The fingerprint evidence on the contents of the footlocker, and the denominations of the bills of the cash found therein, justifies a finding that either the cash was of mixed origin and/or Ms. Nelson had essentially given the cash to her son for his own use. The cash will therefore be ordered forfeited.
With respect to the pistol, the definitions of property subject to forfeiture under R.S. 40:2604, with respect to weapons, is broader than that of other property. This definition includes all weapons possessed, used, or available for use in any manner to facilitate conduct giving rise to forfeiture. This Court believes that both Mr. McGowan and Ms. Nelson had made this weapon “available for use” in prohibited conduct. Consequently, the gun will be ordered forfeited.
Ms. Nelson assigns error to the trial court’s failure to find that Ms. Nelson had carried her burden of proof to show that the money and the gun were not subject to forfeiture. We note that the burden imposed on the claimant seems unconstitutionally harsh under our state constitution and the reasoning of State v. Spooner, 520 So.2d 336 (La.1988). However, the constitutionality of the burden of proof required to be used in forfeiture cases by LSA-R.S. 40:2612G and H was not raised.
LAW
The particular laws from title 40 applicable to this case are:
§ 2603. Conduct giving rise to forfeiture
Any of the following conduct gives rise to forfeiture:
(1) An act or omission punishable by confinement for more than one year under R.S. 40:961 et seq. whether or not there is a prosecution or conviction related to the act or omission.
(2) An act or omission occurring outside this state, which would be subject to prosecution in the place of occurrence and would be described in Paragraph (1) of this Section if the act or omission occurred in this state, whether or not it is prosecuted in any state.
(3) Any act or omission committed in furtherance of any violation of R.S. 40:961 et seq. which is punishable by confinement with or without hard labor, including any inchoate or preparatory offense, regardless *119 of whether there is a prosecution or conviction related to the act or omission.
§ 2604. Property subject to forfeiture
The following property is subject to seizure and forfeiture as contraband, derivative contraband or property related to contraband under the provision of Section 4 of Article I of the Constitution of Louisiana:
(1) All controlled substances, raw materials, or controlled substance analogues that have been manufactured, distributed, dispensed, possessed, or acquired in violation of R.S. 40:961 et seq.
(2) All property that is either:
(a) Furnished or intended to be furnished by any person in exchange for a controlled substance in violation of R.S. 40:961 et seq.
(b) Used or intended to be used in any manner to facilitate conduct giving rise to forfeiture, provided that a conveyance subject to forfeiture solely in connection with conduct in violation of R.S. 40:961 et seq. may be forfeited only pursuant to the provisions of this Chapter.
(3) Proceeds of any conduct giving rise to forfeiture.
(4) All weapons possessed, used, or available for use in any manner to facilitate conduct giving rise to forfeiture.
(5) Any interest or security in, claim against, or property or contractual right of any kind affording a source of control over any enterprise that a person has established, operated, controlled, conducted, or participated in the conduct of through conduct giving rise to forfeiture.
§ 2605. Exemptions
A property interest is exempt from forfeiture under this Chapter if its owner or holder establishes all of the following:
(1) That he is not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know and could not reasonably have known of the conduct or that it was likely to occur.
(2) That he had not acquired and did not stand to acquire substantial proceeds from the conduct giving rise to its forfeiture other than as an interest holder in bona fide commercial transaction.
(3) That with respect to conveyances for transportation only, he did not hold the property jointly, in common, or in community with a person whose conduct gave rise to its forfeiture.
(4) That he does not hold the property for the benefit of or as an agent for any person whose conduct gave rise to its forfeiture, and, if the owner or interest holder acquired his interest through any such person, the owner or interest holder acquired it as a bona fide purchaser for value not knowingly taking part in an illegal transaction.
(5) That no person whose conduct gave rise to its forfeiture had the authority to convey the interest to a bona fide purchaser for value at the time of the conduct.
(6) That the owner or interest holder acquired the interest after the completion of the conduct giving rise to its forfeiture and that the owner or interest holder acquired the interest under all of the following conditions:
(a) As a bona fide purchaser for value who was not knowingly taking part in an illegal transaction.
(b) Before the filing of a forfeiture lien on it and before the effective date of a Notice of Pending Forfeiture relating to it, and without notice of its seizure for forfeiture under this Chapter.
(c) At the time the interest was acquired, there was no reasonable cause to believe that the property was subject to forfeiture or likely to become subject to forfeiture under this Chapter.
§ 2611G & H. Judicial proceedings generally
G. The fact that money or a negotiable instrument was found in proximity to contraband or an instrumentality of conduct giving rise to forfeiture shall give rise to the permissible inference that the money or negotiable instrument was the proceeds of conduct giving rise to forfeiture or was used or intended to be used to facilitate the conduct.
H. There shall also be a rebuttable presumption that any property of a person *120 is subject to forfeiture under this Section if the state establishes all of the following:
(1) That the person has engaged in conduct giving rise to forfeiture.
(2) That the property was acquired by the person during the period of the conduct giving rise to forfeiture or within a reasonable time after that period.
(3) That there was no likely source for the property other than the conduct giving rise to forfeiture.
§ 2612A, G & H. In rem proceedings
A. A judicial in rem forfeiture proceeding brought by the district attorney pursuant to a Notice of Pending Forfeiture or verified petition for forfeiture is subject to the provisions of this Chapter. If authorized by law, a forfeiture shall be ordered by the court in the in rem action.
G. The issue shall be determined by the court alone, and the hearing on the claim shall be held within sixty days after service of the petition unless continued for good cause. The district attorney shall have the initial burden of showing the existence of probable cause for forfeiture of the property. If the state shows probable cause, the claimant has the burden of showing by a preponderance of the evidence that the claimant’s interest in the property is not subject to forfeiture.
H. If the district attorney fails to show the existence of probable cause for forfeiture, or a claimant establishes by a preponderance of the evidence that the claimant has an interest that is exempt under the provisions of Section 2605 of this Chapter, the court shall order the interest in the property returned or conveyed to the claimant. The court shall order all other property forfeited to this state and conduct further proceedings pursuant to the provisions of Section 2615 and 2616 of this Chapter.
The burden used in federal forfeiture cases is strikingly similar to the burden selected by the legislature and enacted after State v. Spooner. See 19 U.S.C. § 1615 & 21 U.S.C. § 881; U.S. v. One 1987 Mercedes 560 SEL, 919 F.2d 327, 331 (5th Cir.1990); State v. Spooner, 520 So.2d 336, 347 & n. 8 (La.1988). Thus, the federal decisions dealing with the burden of proof in forfeiture cases can be useful in interpreting our statutes.
In a federal forfeiture proceeding:
[t]he government has the initial burden “to show probable cause for belief that a substantial connection exists between the property to be forfeited and a crime under Title 21.” United States v. $64,000.00 in United States Currency, 722 F.2d 239, 244 (5th Cir.1984).
Probable cause is a “reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion.” United States v. One 1978 Chevrolet Impala, 614 F.2d 983, 984 (5th Cir.1980) (per curiam). It may be established by demonstrating “ ‘by some credible evidence, the probability that the money was in fact drug related.’” [United States v.] One 1986 Nissan Maxima GL., 895 F.2d [1063, 1064-65 (5th Cir.1990)] (quoting United States v. $215,300.00 in United States Cumncy, 882 F.2d 417, 419 (9th Cir.1989), cert. denied, 497 U.S. 1005, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990) (emphasis in original) (citation omitted)). Probable cause can be established by circumstantial or hearsay evidence. Id. at 1065.
Once the government establishes probable cause, the burden shifts to the claimant .to prove by a preponderance of the evidence that the money used to purchase the properties in question came from an independent, non-drug-related source. United States v. One 1980 Bolls Royce, 905 F.2d 89, 90 (5th Cir.1990); One 1986 Nissan Maxima GL., 895 F.2d at 1065. Thus, failure to refute the government’s showing of probable cause results in forfeiture.
919 F.2d at 331.
The United States Court of Appeals for the First Circuit in U.S. v. Parcel of Land & Res. at 18 Oakwood Street, 958 F.2d 1 (1st Cir.1992), discussed its own interpretation of probable cause. The court stated that:
[a]t the outset of a civil forfeiture action under 21 U.S.C. § 881(a)(7), the government must establish probable cause to believe that the defendant property was used to facilitate a drug crime, United States v. Parcel of Land & Residence at 28 Emery *121 St., 914 F.2d 1, 3 (1st Cir.1990); United States v. Parcels of Real Property, etc., 913 F.2d 1, 3 (1st Cir.1990). By this we mean there must be sufficient evidence to form a “reasonable ground for belief,” id. at 3; United States v. One Lot of U.S. Currency, 927 F.2d 30, 32 (1st Cir.1991), that the defendant property was “connected with illegal drug activity,” United States v. One Parcel of Real Property, 921 F.2d 370, 375 (1st Cir.1990).
958 F.2d at 3.
As with federal law, the initial burden for civil forfeiture proceedings in Louisiana is on the state to show probable cause for forfeiture; not cause for seizure, but for forfeiture. See LSA-R.S. 40:2612G. To support a finding that probable cause exists for forfeiture of property, the evidence presented by the state must be sufficient to form a reasonable ground for the belief that the property was connected with illegal drug transactions. In this case, the state must show, by some credible evidence and by more than mere suspicion, a reasonable ground for belief that the money was drug related and that the gun was used or available for use to facilitate the alleged drug transactions. See State v. 77,014.00 Dollars, 607 So.2d 576, 581-82 (La.App. 3rd Cir.1992), writ denied, 612 So.2d 61 (La.1993). If the state makes this initial showing, the burden shifts to the claimant to prove by a preponderance of the evidence, i.e., it is more likely than not, that the property is not subject to forfeiture. LSA-R.S. 40:2612G. If the claimant proves by a preponderance of the evidence that the claimant and the property are not connected to the drug activity, and therefore exempt under LSA-R.S. 40:2605, “the court shall order the interest in the property returned or conveyed to the claimant.” LSA-R.S. 40:2612H.
APPLICATION OF THE LEGAL PRECEPTS
After a review of the record and application of the rules of civil forfeiture proceedings to this case, we agree with Ms. Nelson that the trial court committed error in its reasoning and in its judgment ordering the property forfeited.
The trial court found that the property seized was in proximity to the contraband or drugs and used the inference provided by LSA-R.S. 40:2611G. However, the word “proximity” as defined in Webster’s Third New International Dictionary, 1976 edition, means “the quality or state of being proximate, next, or very near....” Finding the $15,156 in the same house as the controlled substances, but in a different area or bedroom of the house and in a locked trunk where no drugs were found, is not sufficient proximity to allow the use of the section 2611G inference; especially under the circumstances here where several other people, not accused of drug trafficking, lived in the same house. The section 2611G inference does not apply to guns.
The trial court found that the gun was in the same house as the drugs and, therefore, available for use to facilitate the drug transactions. The holding by the trial court that probable cause for forfeiture of the gun existed was error. The state did nothing but show that the gun was found on a closet shelf in a bedroom sometimes used by Michael Nelson. This showing was insufficient to serve as probable cause for forfeiture. In other words, the state failed to meet its burden to show by credible evidence that a reasonable basis existed for the belief that the gun was “possessed, used, or available for use in any manner to facilitate” the drug transactions. No eonnexity between the gun and the contraband or drug transactions was shown. In fact, no effort was made to show eonnexity. The state relied solely on the gun’s presence in the bedroom.
For the sake of argument alone, even if the presence of the gun in the same house was sufficient probable cause for forfeiture, Ms. Nelson rebutted that showing and proved by a preponderance of the evidence that the gun was obtained from an independent source, not drug related, and that its purpose in the house was the protection of herself and her children. Mr. Lawrence McGowan testified that he was concerned about Ms. Nelson and his children’s safety because his children still lived with their mother and several times some person or *122 persons had attempted to break into the house. Ms. Nelson testified that she kept the gun on a shelf in the closet of the bedroom with a lock and that the gun was not used in any drug related activity. This evidence was sufficient to rebut any showing of probable cause by the state and to show that the gun was exempt from forfeiture. The trial court erred in failing to order the gun returned.
Whether a showing of probable cause for forfeiture of the money was made by the state is a more difficult question. The record reveals a showing by the state that appears to be more of a presentation of suspicion than of a reasonable basis for a belief that the money was connected to any drug transactions. See 607 So.2d at 586-86. The state’s showing of probable cause was based primarily on the “hit” made by the police dog, Michael Nelson’s access to the money, the packaging of the money in small amounts, and the cryptic notebook found in a briefcase in the blue footlocker. However, we certainly agree with Ms. Nelson that even if the state met its burden, she successfully rebutted the showing of probable cause for forfeiture of the money and that the trial court erred in failing to order the money returned.
The trial court found that Ms. Nelson had no direct knowledge of the drug trafficking that allegedly occurred in her house. The trial court did not doubt that the money was obtained by Ms. Nelson as proceeds from a mortgage on her present home, but found that Ms. Nelson had allowed her son control over the money and, on that basis, ordered the money forfeited.
The trial court reasoned that because Michael Nelson made cash payments to the contractor, the loan was made by Ms. Nelson to assist her son build a house, Michael Nelson’s girlfriend had access to the money in the trunk, and the money was in varied denominations, Michael Nelson had some control over the money. Because of that control the trial court believed the money should be forfeited. We find no error in the factual findings, however, the conclusion drawn by the trial court, that access to the money was sufficient to support forfeiture, was an error of law.
Ms. Nelson testified not only that she kept the borrowed money in the footlocker but that she also cashed her Social Security check each month and placed it in the footlocker for safekeeping. She remembered that when she cashed the loan proceeds check that she received mostly $100 bills, but she testified that she received other denominations as well. No drugs were found in the footlocker or in the bedroom where the footlocker was found.
When Michael Nelson stated that the money and cocaine were his, he did not specify nor was he asked whether he meant the money found with the cocaine or all monies found in the house. The fact that Michael Nelson paid the contractor in cash for work on the house, payments that were made before the loan proceeds check was cashed in August of 1990 by Ms. Nelson, and might in the future use the borrowed money to pay other house bills does not support a finding that the money would be used or had been used to facilitate any drug transactions and should be forfeited. The statute in question does not allow the forfeiture of all monies handled by a suspected or convicted drug dealer solely on the basis that the dealer had some control over the money. The inquiry is whether the money was used in exchange for controlled substances, used to facilitate drug transactions, or was the proceeds of a drug transaction. Some connection between the money and the drug related activity must be shown and supported by more than mere suspicion.
Ms. Nelson rebutted any showing of probable cause by the state. Ms. Nelson presented uncontradicted, credible evidence that the money was obtained before the complained of criminal activity from an independent source, not drug related, and that the purpose of the loan was to build a house. The trial court did not find differently. The other items in the trunk, the blueprint, receipts, and house bills, support the claim. Part of the-loan was used to pay consolidated past debts, some of which related to the construction of the house. Ms. Nelson testified that she paid other house construction bills after she *123 cashed the loan proceeds check. She still owed money on the slab and had other construction bills on the unfinished house that had not yet been paid. Ms. Nelson testified that she was not aware of any drug trafficking in the house and did not consent to any such activity.
The notebook that the police believed was of the type used by drug dealers was not submitted at trial. Only a few copied pages were introduced. The information on these pages, and the fact that the notebook was found in the footloeker, did not connect the money with the alleged drug transactions in a manner substantial enough to defeat or contradict evidence presented by Ms. Nelson and prevent Ms. Nelson from meeting her burden to show that the money was exempt from forfeiture. For these reasons, we find that Ms. Nelson proved by a preponderance of the evidence that the money was from an independent source, not drug related, was used for a purpose other than to facilitate the drug transactions, and, therefore, was exempt from forfeiture.
CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court and order that the gun and the $15,156 be returned to the claimant, Ms. Carolyn Nelson. The costs of the proceedings in the trial court and of this appeal, $1,634.50, are assessed to the state.
REVERSED AND RENDERED.